DAVID A. HUBBERT
Deputy Assistant Attorney General

AMY MATCHISON (CABN 217022)
LOLITA DE PALMA (WABN 57380)
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C. 20044-0683
(202) 307-6422 (AM)
(202) 305-3664 (LDP)
(202) 307-0054 (f)
Amy.T.Matchison@usdoj.gov
Lolita.DePalma@usdoj.gov
Western.Taxcivil@usdoj.gov
*Counsel for Plaintiff the United States of America*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) **COMPLAINT TO REDUCE CIVIL** |
| Plaintiff, | ) **PENALTY ASSESSMENTS TO** |
| | ) **JUDGMENT** |
| v. | ) |
| | ) |
| TUNCAY SAYDAM, | ) |
| | ) |
| Defendant. | ) |

Plaintiff, the United States of America, brings this action to collect unpaid federal civil penalty assessments and interest as provided by law and to reduce those assessments to judgment. Additionally, the United States intends to use all appropriate pre-judgment remedies, post-judgment remedies, and additional surcharges as authorized by the Federal Debt Collection

COMPLAINT                    1

U.S. DEPARTMENT OF JUSTICE
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-305-3664

Practices Act (28 U.S.C. § 3001 et seq.) to collect any judgment it obtains in this case. In support of this action, the United States alleges as follows:

## INTRODUCTION

1. This is a timely civil action to collect outstanding unpaid civil penalty assessments, made pursuant to 31 U.S.C. § 5321(a)(5), against Tuncay N. Saydam. These penalties, commonly known as "FBAR penalties," arise from Saydam's failure to report his financial interest in, or signatory or other authority over, several foreign financial accounts for the 2013, 2014, 2015, 2016, and 2017 calendar years, as required under 31 U.S.C. § 5314 and the implementing regulations thereunder.

2. The United States brings this action with the authorization of the Secretary of the Treasury (*see* 31 U.S.C. § 3711(g)(4)(C)) and at the direction of the Attorney General of the United States.

## DEFENDANT

3. Defendant Tuncay Saydam was born in Turkey in 1938. He graduated from Istanbul Technical University and then taught at various universities in Turkey for twenty years.

4. In 1980, Saydam immigrated to the United States to take a teaching position in computer science at the University of Delaware. In 1988, Saydam became a citizen of the United States.

5. Saydam taught at the University of Delaware for 25 years until he retired in 2005.

6. Saydam remains a citizen of both the United States and Turkey. He and his wife own a residence in Turkey, which they visit regularly.

7. Saydam currently resides in San Francisco, California.

COMPLAINT

2

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-305-3664

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 1355.

9. Venue properly lies in the Northern District of California under 28 U.S.C. §§ 1391(b)(1) and 1395(a) because Saydam resides and is found within this judicial district.

## DIVISIONAL ASSIGNMENT

10. Because Defendant Tuncay Saydam currently resides in San Francisco, California, assignment to the San Francisco Division is appropriate.

## FBAR REPORTING REQUIREMENTS

11. Federal law requires every resident or citizen of the United States who has a financial interest in, or signatory or other authority over, a bank, securities, or other financial account in a foreign country to report that relationship to the Internal Revenue Service ("IRS") for each year the relationship exists. *See* 31 U.S.C. § 5314(a); 31 C.F.R. § 1010.350(a).

12. To fulfill this requirement, each such United States resident or citizen must file with the IRS a "Report of Foreign Bank and Financial Accounts," commonly known as an "FBAR." The proper form to report FBAR information for the 2013, 2014, 2015, 2016, and 2017 calendar years was FinCEN Form 114.

13. For the 2013, 2014, and 2015 calendar years, accountholders with an aggregate balance exceeding $10,000 in foreign financial accounts were required to file an FBAR no later than June 30 of the following calendar year. *See* 31 C.F.R. § 1010.306(c). For the 2016 and 2017 calendar years, accountholders with an aggregate balance exceeding $10,000 in financial accounts were required to file an FBAR by April 15 of the following calendar year, with an automatic extension to October 15. *See* Pub. L. No. 114-41, Title II, § 2006(b)(11).

14. Any United States resident or citizen who is required to comply with the FBAR reporting requirements, but fails to do so, may be subject to a civil penalty. For violations involving the willful failure to report an interest in a foreign account, the maximum civil penalty for each violation is the greater of $100,000 (adjusted for inflation) or 50% of the balance in the account at the time of the violation. *See* 31 U.S.C. § 5321(a)(5)(C).

15. The FBAR penalty is subject to interest, additional penalties, and other additions under 31 U.S.C. § 3717.

## SAYDAM'S FOREIGN ACCOUNTS

16. In 2009, Tuncay Saydam opened three bank accounts with Zürcher Kantonalbank ("ZKB"), a bank in Switzerland.

17. By 2011, Saydam had over $400,000 deposited in his ZKB accounts.

18. However, Saydam did not file timely FBARs or otherwise report his interest in the ZKB accounts to the IRS.

19. In 2012, ZKB chose to stop providing banking services to United States citizens due to tightening United States regulations.

20. In March 2012, ZKB sent a letter to Saydam notifying him of this new policy and informing him that his ZKB accounts would be closed.

21. In response, Saydam requested that ZKB transfer the balance of his accounts to DenizBank A.Ş., a private bank in Turkey.

22. On April 9, 2012, ZKB transferred $525,033.90 to Saydam's account with DenizBank.

U.S. DEPARTMENT OF JUSTICE
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-305-3664

23. At various times from 2013 to 2017, Saydam had bank accounts at the following Turkish banks: DenizBank, AkBank T.A.Ş., Turkiye İş Bankası A.Ş., and İş Yatırım Menkul Değerler A.Ş.

24. For each of the years 2013 through 2017, the aggregate amount in these Turkish bank accounts, individually and/or collectively, had a balance that exceeded $10,000 at any time during the calendar year.

25. Specifically, the maximum account balances for Saydam's Turkish bank accounts for the years 2013 through 2017 are as follows:

| Bank Name and Account Number | 2013 | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|---|
| DenizBank 1441 | $810,276 | $842,304 | $671,570 | - | - |
| AkBank 2342 | $27,019 | $27,142 | - | - | - |
| AkBank 6391 | $10,530 | $5,680 | - | - | - |
| AkBank 6651 | - | - | $7,900 | - | - |
| AkBank 7993 | - | - | - | $7,381 | - |
| AkBank 6653 | - | - | - | - | $3,584 |
| Turkiye Bankası 4236 | - | - | $40,000 | - | - |
| İş Yatırım | - | - | - | $206,075 | $208,644 |
| **TOTAL** | **$847,826** | **$875,127** | **$719,472** | **$213,456** | **$212,229** |

26. Saydam was required by law to timely file FBARs reporting his financial interest in these foreign accounts for the years 2013 through 2017.

27. Saydam did not timely file FBARs that disclosed these foreign accounts for the years 2013 through 2017.

//

//

//

## WILLFUL FAILURE TO FILE FBARs

### A. Saydam's Efforts to Conceal Assets

28. In 2012, Saydam received two letters from ZKB, one in March and a second in September, informing him that it would be closing his bank account, as well as those of all other United States citizens, "in view of the expected tightening of the U.S. regulations."

29. ZKB's letters also recommended that Saydam "consult with a qualified tax advisor to determine if there exist any U.S. tax consequences in connection with the closure of the bank relationship, such as additional U.S. tax return filing or disclosure obligations."

30. Saydam did not consult with a qualified tax advisor.

31. Instead, Saydam went to Istanbul, Turkey, to find another bank outside of the United States to deposit his assets.

32. Once he established an account with DenizBank, he requested that ZKB transfer the balance of his ZKB bank accounts to his DenizBank account in Turkey.

33. For tax years 2013 through 2017, Saydam used H&R Block to prepare his tax returns. Three different H&R tax preparers assisted Saydam with his tax returns for the years 2013 through 2017.

34. For each of the relevant tax years, Saydam met with an H&R tax preparer to prepare his return. The tax preparer would ask Saydam questions prompted by H&R's proprietary software.

35. One of these questions was: "Do you have signatory authority over foreign accounts?"

36. Every time Saydam was asked by an H&R tax preparer whether he had signatory authority over a foreign account, Saydam answered in the negative.

37. Schedule B, Part III, line 7a of the Form 1040s Saydam filed for tax years 2014 through 2017, asked whether Saydam had had "a financial interest in or signatory authority over a financial account located in a foreign country" at any time during the tax year.

38. Saydam denied any such interest on his Schedule Bs for each of those years.

39. The Form 1040 Saydam filed for tax year 2013 did not include a Schedule B because Saydam's false answers to the H&R tax preparer's questions made the tax preparer believe that a Schedule B was unnecessary.

### B. Saydam's Lies to IRS Agents

40. In 2018, the IRS began an examination of Saydam's tax returns for tax years 2013 through 2017. The IRS conducted an FBAR examination for tax years 2013 through 2017 in conjunction with the income tax examination.

41. On November 1, 2018, an IRS revenue agent interviewed Saydam as part of the examination.

42. At this interview, Saydam said that he had a bank account with AkBank in Istanbul, Turkey that he used for his expenses when he traveled to Turkey and for expenses associated with his residence in Turkey.

43. Saydam told the revenue agent that this bank account was funded by gold coins he received as an inheritance when his mother died and by wages for contract jobs he had completed.

44. Saydam stated that he had not filed FBARs with his tax returns disclosing this account because he had never been asked about foreign accounts by the H&R tax preparers he used to complete his tax returns.

45. Saydam did not disclose any other foreign bank account besides the AkBank account to the IRS agent during this first interview.

46. On December 7, 2018, the revenue agent interviewed Saydam again. This time Saydam admitted to having had other bank accounts in Turkey, as well as bank accounts in Switzerland.

47. However, Saydam stated that he had opened Swiss bank accounts only when he was working in Switzerland as a professor in the 1980s and 1990s. He insisted that all his Swiss bank accounts were closed prior to 2012.

48. Saydam once again maintained that his Turkish bank accounts were funded by gold coins he had inherited from his mother and mother-in-law in the late 1990s, as well as money he had earned teaching and through special projects in Turkey.

49. It was not until the revenue agent's third interview with Saydam—when Saydam was confronted with bank statements from ZKB—that Saydam admitted that the money in his Turkish bank accounts came from funds he had initially deposited in a Swiss bank account.

50. Saydam told the revenue agent that he had transferred funds from his Swiss bank account with ZKB to DenizBank in Turkey on advice from a friend's son, who worked as an investment advisor in Turkey.

51. Saydam said that this investment advisor told him to close the ZKB account and transfer his money to Turkey but that Saydam did not remember why the investment advisor told him to do so.

52. The stories Saydam told the IRS agent over these three interviews are directly contradicted by ZKB bank records, which show that Saydam transferred the balance of his ZKB

account to DenizBank in Turkey in response to letters from ZKB stating that it was closing accounts held by American citizens in response to tightening United States regulations.

53. Indeed, Saydam demanded that ZKB pay him 2,000 Swiss francs to compensate him for the expenses he incurred in moving his funds from Switzerland to Turkey due to ZKB's change in policy.

## COUNT ONE: REDUCE WILLFUL FBAR PENALTIES TO JUDGMENT

### A. Liability for the Civil Penalty

54. The United States incorporates by reference the allegations in Paragraphs 1 through 53.

55. During the 2013, 2014, 2015, 2016, and 2017 calendar years, Saydam was a United States person within the meaning of 31 C.F.R. § 1010.350(b) because he was a United States citizen and resident.

56. At various points during the calendar years 2013 through 2017, Saydam had a financial interest, within the meaning of 31 C.F.R. § 1010.350(e), in five AkBank accounts, one Turkiye Bankası account, and one İş Yatırım account ("the Accounts").

57. The Accounts were bank accounts in a foreign country.

58. During the calendar years 2013 through 2017, the aggregate balance in the Accounts exceeded $10,000.

59. Saydam did not file FBARs for the 2013, 2014, 2015, 2016, or 2017 calendar years to report his financial interest in the Accounts in violation of 31 U.S.C. § 5314 and 31 C.F.R. § 1010.306(c).

60. Saydam's failure to file FBARs for 2013, 2014, 2015, 2016, and 2017 calendar years was willful within the meaning of 31 U.S.C. § 5321(a)(5).

**B. Assessment and Collection of the Civil Penalty**

61. On March 1, 2021, a delegate of the Secretary of the Treasury timely assessed FBAR penalties against Saydam in the total amount of $437,564.00, due to Saydam's willful failure to file FBARs disclosing his interest in the Accounts to the IRS for calendar years 2013, 2014, 2015, 2016, and 2017. The FBAR penalties were broken down by year as follows:

| Year | FBAR Penalty |
|---|---|
| 2013 | $129,346 |
| 2014 | $133,511 |
| 2015 | $109,764 |
| 2016 | $32,565 |
| 2017 | $32,378 |

62. On March 4, 2021, a delegate of the Secretary of Treasury sent a notice of the assessments and demand for payment for Saydam for the FBAR Penalties at his last known address.

63. As of November 9, 2022, the unpaid balance owed to the United States by Saydam for the FBAR penalties, penalties for late payment under 31 U.S.C. § 3717(e)(2), applicable fees and interest, less any payments, was $486,695.16.

64. The United States is entitled to a judgment against Saydam in the amount of $486,695.16 as of November 9, 2022, plus statutory accruals as provided by law from that date until fully paid.

WHEREFORE, the United States requests that the Court:

A. Enter judgment in favor of the United States and against Saydam in the amount of $486,695.16 as of November 9, 2022, plus statutory accruals from that date until fully paid; and

B. Award the United States, its costs, and such other further relief as the Court deems just and proper.

U.S. DEPARTMENT OF JUSTICE
Tax Division, Western Region
P.O. Box 683
Washington, D.C. 20044
Telephone: 202-305-3664

Dated: November 22, 2022     Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General


*/s/ Lolita De Palma*
AMY MATCHISON
LOLITA DE PALMA
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683, Ben Franklin Station
Washington, D.C.  20044-0683

*Counsel for United States of America*

COMPLAINT — 11

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-305-3664