UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

--o0o--

United States of America,          )
                                   )
                Plaintiff,         )
                                   )
            vs.                    ) No. 4:22-cv-07371-DMR
                                   )
Tuncay Saydam,                     )
                                   )
                Defendant.         )

_____

DEPOSITION OF

OYA SAYDAM

April 24, 2024

_____

DEPOSITION OF OYA SAYDAM, produced as a witness, duly sworn by me via videoconference at the instance of the PLAINTIFF, was taken in the above-styled and numbered cause on April 24, 2024, from 10:08 A.M. to 12:33 P.M., before BRANDON D. COMBS, CSR, RPR, in and for the State of California, reported by computerized machine  shorthand via videoconference.



APPEARANCES


U.S. DEPARTMENT OF JUSTICE, TAX DIVISION,

PO Box 683, Washington, DC 20044, represented by

LOLITA DE PALMA, Attorney at Law, appeared via

videoconference as counsel on behalf of the Plaintiff.

Email: lolita.depalma@usdoj.gov



LAW OFFICE OF DOUGLAS GREENBERG,

201 Spear Street, Suite 1100, San Francisco, CA 94105,

represented by DOUGLAS GREENBERG, Attorney at Law,

appeared via videoconference as counsel on behalf of the

Defendant.

Email: dg@douglasgreenberg.com



INDEX

PAGE

Examination by MS. DE PALMA                                          4

(No exhibits marked.)



OYA SAYDAM,

having been first duly sworn, testified as follows:

EXAMINATION

Q.   (BY MS. DE PALMA)  Good morning.

A.   I don't hear well.  Could you speak up.

Q.   Okay.  Good morning, Ms. Saydam.

A.   Good morning.

Q.   Can you hear me?

A.   I do.

Q.   Today is April 24, 2024.

We're now on record in the case pending in the United States District Court for the Northern District of California, United States versus Tuncay Saydam, Civil Action Number 4:22-cv-07371-DMR.

My name is Lolita De Palma, and I'm a trial attorney with United States Department of Justice Tax Division.

At this time, Doug, could you make your appearance for the record.

MR. GREENBERG:  I'm Douglas Greenberg for Tuncay Saydam.

Q.   (BY MS. DE PALMA)  Ms. Saydam, could you please state your full name and spell it for the record.

A.   Oya Saydam, O-y-a, S-a-y-d-a-m.



EXCEEDING YOUR EXPECTATIONS

COMBS REPORTING, INC.

DEPOSITION REPORTERS • LEGAL VIDEO

Q. Do you have any former names?

A. Yes, Ayse, A-y-s-e.

Q. Is that your former last name?

A. No, it's the middle name.

Q. Okay. You used to be Oya, what was it, Ayse?

A. Ayse.

Q. Ayse, Saydam. But -- and I think Tuncay mentioned this as well, when you came to the United States, did you drop the middle name?

A. Yeah.

Q. Do you have -- did you have a maiden name?

A. Yes.

Q. What was that name?

A. Artun, A-r-t-u-n.

Q. Great. What is your current address?

A. 401 Harrison Street, 12H.

Q. Is that in San Francisco?

A. Yes.

Q. Okay. The oath you just took is the same oath you would take in a courtroom, so you're under the same obligation to tell the truth as you would be in a court of law.

Do you understand?

A. Yes.

Q. Good. I'll set out the ground rules for the



deposition.

This deposition is being taken in accordance with the Federal Rules of Civil Procedure.  That means that your answers will be recorded by the court reporter, and he will record every word.

He is here at my request and he will keep recording until I instruct him to stop.

Because your answers will be recorded by the court reporter, it's important that you answer verbally and speak up.  Gestures such as nodding your head will not be recorded.

Do you understand?

A.   Yes.

Q.   If I ask a question that's unclear, please let me know and I'll rephrase it.  If you answer the question, I'll assume that you have heard it and understood it and have given me your best recollection.

Does that make sense?

A.   Yes.

Q.   It may tend to become conversational as we start to talk, but it's important that you let me finish my question before you give an answer, so he can record both the question and the answer.

Does that make sense?

A.   Yes.



EXCEEDING YOUR EXPECTATIONS
COMBS REPORTING, INC.
DEPOSITION REPORTERS • LEGAL VIDEO

Q.    The purpose of the deposition is not to try to trick you into saying something that is not true, but to find out the truth.  If you don't know the answer to a question, say, I don't know.

Sometimes it happens that you will give an answer as completely as you can and then later on you'll remember some additional information or perhaps some clarification in response to an earlier question.

If that happens to you, please tell us that you would like to add something to the earlier answer and we'll do that right then when it's on your mind.

Does that make sense?

A.    Yes.

Q.    Please do not consult anything or anyone while a question is pending or talk to anyone else while questioning is ongoing, and please tell me if you're speculating.

A.    If I'm what?

Q.    Speculating, or guessing.

We will go at a pace that is comfortable for you.  If you need a break, let me know.  If we're in the middle of a line of questioning, I'll finish my line of questioning and then see what we can do about a break.

And as we discussed, we'll try to take breaks



EXCEEDING YOUR EXPECTATIONS

COMBS REPORTING, INC.

DEPOSITION REPORTERS • LEGAL VIDEO

about every hour.

You'll have an opportunity to read over the transcript and make any corrections before you sign it.

If you make any changes other than grammatical and typographical changes, I'm going to reserve the right to come back and ask you about those changes.

Does that make sense?

A.   Yes.

Q.   Some of these questions may seem obvious or redundant.  So we can get a clear record, I may ask you something that you feel like you already answered.  Please be patient with me.  It's critical that we get your full, complete, and accurate answers.

The following questions are not meant to embarrass you in any way.  They have to be asked on the record before the deposition is taken.

Are you in any pain?

A.   No.

Q.   Are you able to sit for a prolonged period of time?

A.   Yes.

Q.   Are you under the influence of any medication or substance that might affect your ability to remember?



EXCEEDING YOUR EXPECTATIONS
COMBS REPORTING, INC.
DEPOSITION REPORTERS • LEGAL VIDEO

A.    No.

Q.    Do you understand?

Are you under the influence of any medication or substance that might affect your ability to understand?

A.    No.

Q.    Are you under the influence of any medication or substance that might affect your ability to tell the truth?

A.    To what?

Q.    Tell the truth.

A.    No.

Q.    Have you ever been convicted of a criminal offense?

A.    No.

Q.    You have to speak up a little bit.

A.    No.

Q.    For the court reporter.

Have you ever given any other testimony under oath?

A.    No.

Q.    Is there any reason why you can't give full, complete, and accurate testimony today?

A.    No.

Q.    What did you do to prepare for this



deposition?

A.   Tried to forget it, rest.

Q.   **Tried to what?**

A.   Forget that I will be here.

Q.   **Did you speak to anyone prior to this deposition, about the deposition?**

A.   I don't know, no.

Q.   **Okay.  Did you review any documents before the deposition?**

A.   No.

Q.   **And did you bring any documents with you today?**

A.   No.

Q.   **Okay.  When were you born, or what year were you born?**

A.   1946.

Q.   **Where were you born?**

A.   In Ankara, Turkey.

Q.   **Where did you go to college?**

A.   Ankara.

Q.   **What did you study?**

A.   English literature.

Q.   **When did you graduate?**

A.   1967.

Q.   **Do you have any graduate degrees?**



EXCEEDING YOUR EXPECTATIONS

COMBS REPORTING, INC.

DEPOSITION REPORTERS • LEGAL VIDEO

A.    No.

Q.    Have you studied at any other universities?

A.    No.

Q.    When did you learn English?

A.    In high school.

Q.    What did you do after you graduated college?

A.    I was married while I was still in college and had a baby while I was still in college.  So I didn't start working.

Q.    When did you meet your husband, Mr. Saydam?

A.    Let me think.  1965.

Q.    How did you meet him?

A.    He was my -- I went to visit my brother, and he was there too.

Q.    And when were you married?

A.    1965.

Q.    And how many children do you have?

A.    Two.

Q.    When did you move to the United States -- when did you first move to the United States?

A.    I think 1969.

Q.    So --

A.    For two years.

Q.    Is this when Mr. Saydam was working at a university?



A.   No, that was before that.

Q.   Okay.  So the first time when you came here, when he was working at the University of Texas, when was that?

A.   That was before we were married.

Q.   But you came with him?

A.   No.

Q.   He went by himself?

A.   Yeah.

Q.   Okay.  But it is true that he came here to work at the University of Texas?

A.   Yes.

Q.   And then he came back and then -- and then you and him both moved here?

A.   Yes.

Q.   Was that when he got the job at the University of Delaware?

A.   Yes.

Q.   And what are your daughters' names?

A.   Yaprak, Y-a-p-r-a-k, and Tippi, T-i-p-p-i.

Q.   Why did you move to the United States?

A.   First of all, political situation wasn't so good in Turkey.  And we wanted to raise our kids here, speaking English.

Q.   When did you become a United States citizen?



A.    I don't remember the dates.

Q.    Did you and Mr. Saydam become citizens at the same time?

A.    I think so.

Q.    Did you do the process together?

A.    Yes.

Q.    Do you remember what that process was like?

A.    It's the process we applied, and we were given a date, and we went to the courthouse probably.

Q.    Where did you live when you first moved to the United States?

A.    Newark, Delaware.

Q.    Did you work in the United States at any point?

A.    Yes, I worked as a substitute teacher.

Q.    Do you remember when that was?

A.    Not really.

Q.    Was this when your husband was still teaching at the University of Delaware?

A.    Yes.

Q.    Any other jobs that you've had?

A.    No.

Q.    When did you move to San Francisco?

A.    Three years ago.

Q.    Why did you move to San Francisco?



EXCEEDING YOUR EXPECTATIONS
COMBS REPORTING, INC.
DEPOSITION REPORTERS • LEGAL VIDEO

A.   We were getting old.  Still are.  And we thought we needed help.  And since our daughter and our son-in-law are both physicians, we thought they might be helpful at our old age.  And we could not take care of a big house in Delaware.

Q.   **When you first moved to San Francisco, where did you live?**

A.   We lived with our daughter for a while.

Q.   **And where do you live now?**

A.   401 Harrison Street.

Q.   **When did you move?**

A.   I remember it was June.

Q.   **Do you still have your Turkish citizenship?**

A.   Right.

Q.   **How often do you travel to Turkey?**

A.   Generally once a year.

Q.   **Has that changed in the past decade?**

A.   What?

Q.   **From 2010 to 2020, did you travel to Turkey more than you do now?**

A.   Yes, we used to go in winter too, but we're getting too old to travel.

Q.   **So now you go just in the summers?**

A.   Generally, yes.

Q.   **And in the 2010 to 2020 period you would go**



EXCEEDING YOUR EXPECTATIONS

COMBS REPORTING, INC.

DEPOSITION REPORTERS • LEGAL VIDEO

both in the summer and in the winter?

A.   Yes.

Q.   What about before 2010?  Did you travel twice a year or once a year to Turkey?

A.   I don't remember.

Q.   Okay.  Do you and Mr. Saydam usually travel to Turkey together?

A.   Generally, not always.

Q.   Sometimes you'll travel separately?

A.   Yes.

Q.   Does one of you typically spend more time in Turkey than the other?

A.   It depends.

Q.   What about in the 2010 to 2020 period?  Was Mr. Saydam spending more time in Turkey than you?

A.   I don't remember.

Q.   Okay.  Do you still have family in Turkey?

A.   Yes.

Q.   What family?

A.   I have cousins and nieces.

Q.   Do you have any property in Turkey?

A.   I do.

Q.   What property?

A.   We have an apartment, a condo, a flat, in Istanbul in our both names.  And then I have some



EXCEEDING YOUR EXPECTATIONS

COMBS REPORTING, INC.

DEPOSITION REPORTERS • LEGAL VIDEO

property I have inherited from my mother.

Q.    Between 2010 and 2020, did you have any additional property in Turkey?

A.    No.

Q.    Do you have any other citizenships besides Turkish and American?

A.    No.

Q.    What languages do you speak?

A.    Turkish and English.

Q.    Have you ever traveled to Switzerland?

A.    Yes.

Q.    When?

A.    I don't remember the exact dates.

Q.    Was it in the 1990s?

A.    Could be.

Q.    Do you think before or after?

A.    Well, when my husband was working there, I would go.

Q.    Have you traveled to Switzerland after 2000?

A.    I don't remember.

Q.    Do you remember when your husband last worked in Switzerland?

A.    My husband?

Q.    Yeah, when he was last working there?

A.    I don't remember.



EXCEEDING YOUR EXPECTATIONS
COMBS REPORTING, INC.
DEPOSITION REPORTERS • LEGAL VIDEO

Q.   You don't remember.

Did your husband do any work in Switzerland after 2005?

A.   I don't recall.

Q.   And do you know if he went to Switzerland after 2005?

A.   I don't remember.

Q.   Do you or your husband regularly go to Switzerland?

A.   Well, we went there when he had two sabbaticals.  I went with him.

Q.   Do you remember when the sabbaticals were?

A.   I don't remember the dates.

Q.   Were they before he retired from the University of Delaware?

A.   No, sabbaticals are when you're still working.

Q.   So the sabbaticals wouldn't have taken place after he retired from the University of Delaware?

A.   No.

Q.   In your view, what is this case about?  What is your understanding of what this case is about?

A.   I really don't understand a lot.

Q.   Okay.  Do you remember what universities your husband taught at in Switzerland?



A.    In Zurich it was E-T-H.  In Lausanne it was -- it was called Polytechnique, something like that.

Q.    Ecole Polytechnique Federale?

A.    Could be.

Q.    EPFL?  Okay.

Besides the sabbaticals, would your husband attend conferences in Switzerland?

A.    Yes.

Q.    Do you remember when that was?

A.    No.

Q.    Do you know if it was before or after he retired?

A.    Well, you know, professors go to conferences all the time, and I never kept track of them.

Q.    Did your husband do consulting for Swiss companies?

A.    I think so.

Q.    Do you remember when that was?

A.    No.

Q.    Do you remember if it was before or after he retired?

A.    I don't know.

Q.    Did you or Mr. Saydam ever have property in Switzerland?



EXCEEDING YOUR EXPECTATIONS

COMBS REPORTING, INC.

DEPOSITION REPORTERS • LEGAL VIDEO

A.    No.

Q.    Did you or Mr. Saydam open any bank accounts in Switzerland?

A.    Together?  No.

Q.    What about separately?

A.    Yeah, he had the account.

Q.    Do you remember when he opened it?

A.    No.

Q.    Do you remember when he closed it?

A.    No.

Q.    Do you remember which bank it was with?

A.    No.  I'm not good with financial things.  I never take care of them.

Q.    Do you know how many bank accounts he had in Switzerland?

A.    How many?

Q.    Yes.

A.    I don't know.

Q.    Okay.  Do you know where the money that was in his Swiss bank account came from?

A.    No.

Q.    Okay.

All right.  This is your binder, right here. We're going to go to Tab 12.

A.    I have cataracts, so I don't see well.



EXCEEDING YOUR EXPECTATIONS

COMBS REPORTING, INC.
DEPOSITION REPORTERS • LEGAL VIDEO

Q.    Okay.  So yes, Tab 12.  This has already been marked as Exhibit 12, and it's Bates stamped USA000118.

Do you recognize this page at all?

A.    Do I recognize what?

Q.    Have you seen this before?

A.    No.

Q.    In the middle of the page there's a signature?

A.    Yep.

Q.    Do you recognize that signature?

A.    Yes, that's my signature.

Q.    And at the bottom there's a signature?

A.    That's my husband's signature.

Q.    Okay.  I'm going to represent that this is a signature agreement for a bank account with ZKB.

At the top in the left corner there's an address, and it might be hard for you to read, so I can read it for you.  It says Tuncay Saydam, Faruk Ayanoglu Cad., Filiz --

A.    I know that address.

Q.    What is that address?

A.    That's the building that was -- I have inherited from my mother.

Q.    Do you remember when you inherited that property?



A.    Right before the millennium.  It was November 1999.

Q.    So November 1999 is when you inherited the property?

A.    Yeah, that's when she died.

Q.    When you stayed in Turkey, is that the address you would stay at?

A.    Yes, for a while, but not now.

Q.    During what period would you stay there?

A.    We kept the flat after my mom died.  I didn't want to sell it or let anybody live there, so we went and stayed there for -- when we went to Turkey, I wanted to stay with my mother's house.

Q.    Do you know why this would be the address for this Swiss bank account?

A.    I don't know.  That was one of our addresses.

Q.    Okay.  Did you use this address for any other bank accounts?

A.    I don't know.

Q.    Okay.  Let's go to 000122.  Five pages in.

A.    Okay.

Q.    So this is Bates stamped USA000122.  Do you recognize this page?

A.    Yes.

Q.    What is this a photocopy of?



copy of the transcript?

MR. GREENBERG:  Yes.

(Whereupon, the deposition adjourned at

12:33 P.M.)

--oOo--

I declare under penalty of perjury that the

foregoing is true and correct.  Subscribed at

_____, this ____ day of

_____, 2024.

_____

OYA SAYDAM



EXCEEDING YOUR EXPECTATIONS

COMBS REPORTING, INC.

DEPOSITION REPORTERS • LEGAL VIDEO

CERTIFICATE OF REPORTER

I, BRANDON D. COMBS, a Certified Shorthand Reporter, hereby certify that the witness in the foregoing deposition was by me duly sworn to tell the truth, the whole truth, and nothing but the truth in the within-entitled cause;

That said deposition was taken in shorthand by me, a disinterested person, at the time and place therein stated, and that the testimony of the said witness was thereafter reduced to typewriting, by computer, under my direction and supervision;

That before completion of the deposition, review of the transcript was not requested.  If requested, any changes made by the deponent (and provided to the reporter) during the period allowed are appended hereto.

I further certify that I am not of counsel or attorney for either or any of the parties to the said deposition, nor in any way interested in the event of this cause, and that I am not related to any of the parties thereto.

DATED: May 6, 2024

_____

BRANDON D. COMBS

RPR, Texas CSR 10927, California CSR 12978



NAME OF CASE:        United States of American Vs. Tuncay Saydam

DATE OF DEPOSITION: 04/24/2024

Regarding Original Deposition Transcripts:

Dear Clients,

        As a courtesy and at no additional cost, effective 11/1/2023, Combs Reporting will securely place all sealed original transcripts in long-term storage. This practice has been initiated by popular demand and is optional at your direct request.

        These transcripts will no longer be automatically sent to the noticing party after 30 days as we previously have in the past. Instead, sealed original transcripts will now be securely placed in long-term storage at the offices of Combs Reporting.

        This new procedure will reduce environmental impact, save storage space at your office, and reduce shipping costs.

        Sealed original transcripts needed for any reason such as an upcoming trial may be requested by sending an e-mail to Production@Combsreporting.net. If you wish, we can send them to the noticing party or directly to the court per your instructions.  Please indicate the case name, date needed, and address.

        Please allow at least 72 hours for delivery.



NAME OF CASE:       United States of American Vs. Tuncay Saydam
DATE OF DEPOSITION: 04/24/2024
05-06-2024

Dear,  Oya Saydam,

Please be advised that, the original transcript of your deposition taken on 04/24/2024 in the above-entitled matter is available for reading and signing. The original transcript will be held at the offices of Combs Reporting Inc.  It will be available for reading and signing for thirty (30) days in accordance with California Code of Civil Procedure Section 2025.520 (b):

"For 30 days following each notice under subdivision (a), unless the attending parties and the deponent agree on the record or otherwise in writing to a longer or shorter time period, the deponent may change the form or the substance of the answer to a question, and may either approve the transcript of the deposition by signing it, or refuse to approve the transcript by not signing it."

If you are represented by counsel in this matter, you may wish to ask your attorney how to proceed.  You may submit your errata sheet by email or request an appointment by emailing Production@combsreporting.net.

Thank you for your cooperation in this matter.

Sincerely,

Combs Reporting



Errata Sheet


NAME OF CASE:      United States of American Vs. Tuncay Saydam

DATE OF DEPOSITION: 04/24/2024

NAME OF WITNESS:   Oya Saydam

Page___Line___

_____

Page___Line___

_____

Page___Line___

_____

Page___Line___

_____

Page___Line___

_____

Page___Line___

_____

Page___Line___

_____

Page___Line___

_____


Signature        _____ Oya Saydam



EXCEEDING YOUR EXPECTATIONS
COMBS REPORTING, INC.
DEPOSITION REPORTERS • LEGAL VIDEO