UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>TUNCAY SAYDAM,<br>Defendant. | Case No. 22-cv-07371-DMR<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 34 |

Plaintiff the United States of America ("the Government") brings this case against Defendant Tuncay Saydam alleging that he failed to comply with U.S. tax laws requiring him to annually report his foreign bank accounts in a Report of Foreign Bank and Financial Accounts ("FBAR"). 31 U.S.C. § 5314; 31 C.F.R. §§ 1010.306(c), 1010.350(a). The parties do not dispute that Defendant had foreign accounts with a total balance exceeding $10,000 from 2013 through 2017, that he was required to file an annual FBAR in this time period, and that he failed to timely file FBARs. [Docket No. 36 (Opp'n) 8.][1] The only issue is whether Defendant's failure to timely file FBARs was "willful," thus rendering him liable for civil willful FBAR penalties under 31 U.S.C. § 5321(a)(5)(C). [Docket Nos. 34 (Mot.) 12; 38 (Reply).]

The Government moves for summary judgment, arguing that the evidence shows that Defendant's failure to file timely FBARs was willful as a matter of law. Mot. 34. Defendant opposes by asserting that material facts remain in dispute. Opp'n 9. This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the following reasons, the Government's motion is denied.

---

[1] Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

## I. BACKGROUND

The following facts are undisputed.[2] Defendant was born in 1938 in Turkey. [Docket No. 34-1 (Dep. Tuncay Saydam) 13:7-15.] He worked as a professor in Turkey, and then moved to the United States in 1980 to teach computer science at the University of Delaware. *Id.* at 16:5-23; 18:25. He became an American citizen in 1988 or 1989. *Id.* at 19:15-17. He maintained dual Turkish citizenship and would travel to Turkey once or twice a year throughout the relevant time period. *Id.* at 23:16-24:12. In the late 1980s and for a period of time in the 1990s, Defendant also worked and taught in Switzerland. *Id.* at 20:18−25; 27:5−22; 32:2−6.

Defendant has maintained bank accounts in Turkey with Akbank T.A.Ş. ("Akbank") since around the 1980s. *Id.* at 82:6-13. At some point before 2009, he opened bank accounts with Zürcher Kantonalbank ("ZKB") in Switzerland, in which he kept his university salaries and consulting fees—a major part of his life savings. *Id.* at 39:17−40:11; 66:22−67:9; 80:2-12. Sometime before 2012, he also opened a bank account with M&T Bank in America. [Docket No. 34-22 (M&T Bank Statement).]

In 2012, ZKB terminated Defendant's accounts because of tightening U.S. regulations. [Docket Nos. 34-16, 34-21 (ZKB Termination Letters).] Defendant opened new Turkish bank accounts with DenizBank A.Ş. ("DenizBank") and transferred his ZKB funds (over $500,000) into the DenizBank accounts. Tuncay Dep. 63:20−64:18, 65:23−66:4, 76:10−77:4; [Docket No. 34-17 (ZKB to DenizBank transfer)]. At the same time, Defendant entered an agreement with Egeli & Co. Portfoy Yönetimi A.Ş. ("Egeli & Co.") to manage his portfolio with DenizBank. Tuncay Dep. 84:10−85:1; [Docket No. 34-24 (Egeli & Co. Agreement)]. In 2015, after Egeli & Co. had caused Defendant to lose almost half of his DenizBank funds, Defendant terminated his relationship with Egeli & Co. and transferred the remaining funds to new Turkish bank accounts that he opened with Turkiye İş Bankası A.Ş. ("Isbank"). Tuncay Dep. 125:9−126:21; 131:15−132:12; [Docket Nos. 34-26 (DenizBank Letter); 34-29 (Isbank Statements)]. Defendant sued Egeli & Co. for his losses and ultimately prevailed. [Docket No. 34-28 (Guleryuz Letter).]

---

[2] The court does not include every fact submitted by the parties—only those relevant to determining the motion.

2

1    From 2013 to 2017, Defendant would fill out his U.S. tax returns every year during an in-
2    person appointment with a tax preparer at H&R Block in Delaware. Tuncay Dep. 159:3-162:19.
3    During these appointments, Defendant did not disclose his foreign bank accounts, and did not file
4    FBARs. *Id.*; [Docket Nos. 34-54 (2013 Tax Return), 34-55 (2014 Tax Return), 34-56 (2015 Tax
5    Return), 34-57 (2016 Tax Return), 34-58 (2017 Tax Return) (collectively "Saydam Tax
6    Returns")].

## II.   OBJECTIONS TO EVIDENCE

The Government objects to Defendant's Exhibits 3, 7, 8, 9, and 11 because Defendant had not provided these exhibits to the Government before filing the opposition. [Docket Nos. 36-7, 36-11, 36-12, 36-13, and 36-15.] The Government objects to Defendant's Exhibit 6 as inadmissible hearsay. [Docket No. 36-10 (Emails Re. Bank Statements).] The Government also objects to Defendant's Exhibit 1 as irrelevant. [Docket No. 36-5 (Emails Re. Levy on Residence).]

As the court does not rely on Exhibits 1, 3, 6-9, and 11 in reaching its decision, the Government's objections are denied as moot.

## III.   LEGAL STANDARDS

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Devereaux v. Abbey*, 263 F.3d 1070, 1079 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The court must view the evidence in the light most favorable to the non-moving party. *Fresno Motors, LCC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A genuine factual issue exists if sufficient evidence favors the non-movant such that "a reasonable [judge or] jury could return a verdict for the nonmoving party. *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (alteration in original) (quoting *Anderson*, 477 U.S. at 248). The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting *Anderson*,

3

477 U.S. at 255).

To defeat summary judgment once the moving party has met its burden, the nonmoving party may not simply rely on the pleadings, but must point to specific facts, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, showing that a genuine issue of material fact exists. *Devereaux*, 263 F.3d at 1076. More than a "scintilla of evidence" must exist to support the non-moving party's claims. *Pomona*, 750 F.3d at 1049 (quoting *Anderson*, 477 U.S. at 252). A showing that "there is some 'metaphysical doubt' as to the material facts as issue" will not suffice. *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Pomona*, 750 F.3d at 1049-50 (quoting *Matsushita*, 475 U.S. at 587).

## IV.     DISCUSSION

### A.     Willfulness

Section 5321(a)(5) imposes liability in the case of any person "willfully violating, or willfully causing any violation of," failing to timely file an FBAR. 31 U.S.C. § 5321(a)(5). Section 5321(a)(5) does not define willfulness, nor has the Ninth Circuit addressed willfulness in the FBAR context. Courts interpreting section 5321(a)(5) (including courts in this district) have found that willfulness includes "both knowing and reckless violations" of the statute. *See United States v. Burga*, No. 5:19-CV-03246-EJD, 2023 WL 8190173, at *9 (N.D. Cal. Nov. 27, 2023) (collecting cases). When defining recklessness, the Third and Fourth Circuits have held that a defendant is reckless in the FBAR context if he "(1) clearly ought to have known that (2) there was a grave risk that an accurate FBAR was not being filed and if (3) he was in a position to find out for certain very easily." *Burga*, 2023 WL 8190173, at *10 (citing *United States v. Horowitz*, 978 F.3d 80, 89 (4th Cir. 2020)); *see also United States v. Goldsmith*, 541 F. Supp. 3d 1058, 1083 (S.D. Cal. 2021) (in defining willfulness under section 5321(a)(5), reviewing Supreme Court cases that interpret civil willfulness as including objective recklessness). In another civil context, the Ninth Circuit has held that "a reckless defendant is one who . . . knows of a substantial and

unjustified risk of such wrongdoing." *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 833 (9th Cir. 2019) (citing *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 770 (2011)).

Some courts have also found that willfulness includes "willful blindness," which is where the defendant "(1) subjectively believed there was a high probability that a fact exists and (2) [took] deliberate actions to avoid learning of that fact." *Goldsmith*, 541 F. Supp. 3d at 1083 (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760-61, 766 (2011)); *see also United States v. Hughes*, No. 18-CV-05931-JCS, 2020 WL 1536509, at *6 (N.D. Cal. Mar. 31, 2020) (finding that "willful blindness to the obvious or known consequences of one's actions also satisfies the willfulness standard" in an FBAR case); *United States v. McBride*, 908 F. Supp. 2d 1186, 1210 (D. Utah 2012) (finding that willful blindness satisfies the civil willfulness requirement in the FBAR context).

Neither party adequately briefed the "willfulness" standard, including the definition of "recklessness" in the FBAR context. The Government asserts that the word "willful" means knowing, reckless, or willfully blind violations of the statute. Mot. 12-13. Defendant does not appear to contest this interpretation of the statute, Opp'n 22-23, but that does not mean the Government is correct. The parties will be expected to thoroughly analyze the willfulness standard in preparing jury instructions. For purposes of this motion, the court does not need to decide the issue because on this record, a reasonable juror could conclude that Defendant acted negligently as opposed to willfully under any of the definitions of willfulness discussed above.

Willfulness does not include negligent violations of the statute, and recklessness is not to be confused with negligence. In another civil statutory context, the Ninth Circuit has defined negligence as when the defendant "should have known" or had "constructive knowledge" of wrongdoing. *Kast*, 921 F.3d at 833-34. "[C]ivil recklessness requires proof of something more than mere negligence: 'It is [the] high risk of harm, objectively assessed, that is the essence of recklessness at common law.'" *Goldsmith*, 541 F. Supp. 3d at 1083 (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007)).

"Generally, a determination as to willfulness requires an assessment of a party's state of mind, a factual issue that is not usually susceptible to summary judgment. . . . Nonetheless, when

5

1  the relevant facts are undisputed, willfulness can be resolved on summary judgment." *JUUL*
2  *Labs, Inc. v. Chou*, 557 F. Supp. 3d 1041, 1055 (C.D. Cal. 2021) (citing *UMG Recordings, Inc. v.*
3  *Disco Azteca Distribs., Inc.*, 446 F. Supp. 2d 1164, 1173-74 (E.D. Cal. 2006)).

### B.   Disputed Material Facts Exist

As the moving party, the Government bears the burden of establishing the absence of a genuine issue of material fact. *See Devereaux*, 263 F.3d at 1079. The record demonstrates that genuine factual disputes remain.

Plaintiff argues that Defendant's Schedule B forms demonstrate a willful violation of the statute. From 2014 to 2017, Defendant filed Schedule B forms through tax preparing services at H&R Block. Tuncay Dep. 159:3-162:19. Question 7a of Schedule B asks: "At any time during [the tax year], did you have a financial interest in or signature authority over a financial account . . . located in a foreign country?" From 2014 to 2017, Defendant filled out "No" for this question. Saydam Tax Returns. Defendant does not dispute that he signed and filed the tax returns under penalty of perjury. Tuncay Dep. 162:6−19, 164:7−13, 166:25−167:4. He also does not dispute in his opposition brief that his answers to Question 7a were false. However, he argues that the Schedule B forms do not demonstrate a willful violation because the H&R Block tax preparers never asked him about foreign accounts, so he was not aware that his foreign accounts were relevant to his U.S. tax returns. Opp'n 16-19. The Government responds that Defendant cannot genuinely dispute that H&R Block failed to ask him about his foreign accounts, because all three of Defendant's H&R Block tax preparers testified that they always ask their clients about foreign accounts before filling in the Schedule B form. Reply 2-6. And even if there were a genuine dispute, the Government argues that H&R Block's conduct is not material, because the fact that Defendant signed and filed the tax returns is sufficient in and of itself to demonstrate willfulness. *Id.* at 6-7.

"[C]ourts are split as to whether signing a tax form puts a person on constructive notice of the FBAR requirements such that the failure to comply is evidence of willfulness." *Burga*, 2023 WL 8190173, at *10. At least one case in this district has found that, although signatures on tax forms would indicate "constructive knowledge of the FBAR requirements and the risk they were

6

1  not met, this alone is not enough to show willfulness." *See id.* at *14. This is in line with the
2  Ninth Circuit's careful differentiation between the negligence standard (when the defendant
3  "should have known" or had "constructive knowledge" of wrongdoing) and the recklessness
4  standard (when the defendant "[knew] of a substantial and unjustified risk of such wrongdoing").
5  *Kast*, 921 F.3d at 833-34.

6        *Goldsmith*, cited by the Government, does not contradict this. The *Goldsmith* court
7  identified five factors common to findings of recklessness in similar FBAR cases at summary
8  judgment: the defendant "(1) answered 'no' to Question 7a, despite having foreign income while
9  also failing to pursue knowledge of further reporting requirements as suggested on Schedule B; (2)
10  used a numbered account; (3) asked the foreign bank where the foreign account was held to hold
11  all mail related to the foreign account; (4) concealed income or financial information related to the
12  foreign account from his or her tax preparer; and (5) signed federal tax return, which failed to
13  disclose a foreign account, without reviewing it for accuracy." *Id.* at 1091 (citing *Rum*, 995 F.3d
14  at 884–86, 889–91; *Kimble II*, 991 F.3d at 1241-43 (Fed. Cir. 2021); *Horowitz*, 978 F.3d at 81-82,
15  90). The *Goldsmith* court explicitly stated that it "need not rely on [the defendant's] signing
16  incorrect tax returns alone" because further evidence supported the court's finding of willfulness.
17  *Id.* at 1097.

18        This case is distinguishable from *Goldsmith*. Defendant did not use a numbered account to
19  open his foreign accounts (which would have made it more difficult for the U.S. Government to
20  connect him with the foreign accounts). Opp'n 15. There is also some evidence that Defendant
21  engaged in activities inconsistent with an attempt to conceal his foreign accounts from the U.S.
22  For instance, he provided a W-9 form to ZKB listing his U.S. address and taxpayer identification
23  number, despite being informed of the possibility that it would cause his ZKB account to be
24  shared with the U.S. government. *See* [Docket Nos. 34-12 (stating that W-9 "will be forwarded to
25  [ZKB's] external depository who will disclose the identities of the partners to the IRS"); 36-6
26  (Saydam W-9)]. In addition, a reasonable jury may interpret Defendant's conduct as cooperative
27  once the IRS began to examine his tax records in 2018, because he promptly disclosed one of his
28  foreign accounts to the IRS and admitted that he had violated the FBAR requirements, even if he

1  did not immediately disclose all of his foreign accounts. [Docket No. 34-43 (Libertad Montelongo
2  Decl., May 31, 2024).]
3        Defendant also attacks the credibility of the H&R Block employees who prepared
4  Defendant's tax returns. Although the employees testified that they always ask their clients about
5  foreign accounts before filling in the Schedule B form, there is no record of exactly what they
6  asked Defendant, and none of the individuals involved remember the details of Defendant's
7  appointments. [Docket Nos. 34-3 (Linda Dunn Dep.); 34-4 (German Gomez Dep.); 34-5 (Morris
8  Rorer Dep.).] None of the employees are qualified to prepare returns related to foreign income.
9  *Id.* Defendant testified that each appointment took "at most 20 minutes," he would rely on the tax
10 preparer to fill in the requisite forms, and he would only briefly review the tax return for the
11 "numbers that we owed." Tuncay Dep. 159:3-160:1. While this evidence could support a finding
12 that the tax preparers asked Defendant about his foreign accounts and that he acted willfully in
13 failing to disclose them, the Court is "not entitled to weigh the evidence and resolve disputed
14 underlying factual issues." *See JUUL Labs, Inc. v. Chou*, 557 F. Supp. 3d 1041, 1056 (C.D. Cal.
15 2021) (citing *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992)). A reasonable
16 jury could conclude that Defendant's signed tax forms, which were the product of short and
17 routinized oral interviews conducted by the H&R Block employees, are insufficient to establish
18 willfulness. Reasonable jurors could differ on whether Defendant's failure to review his Schedule
19 B or consult with a specialized foreign income tax preparer demonstrates willfulness or mere
20 negligence.
21       Taking the record as a whole and drawing all inferences in favor of Defendant as the non-
22 moving party, a reasonable jury could determine that he acted negligently as opposed to willfully.
23 Therefore, a jury must decide the issue and summary judgment is not warranted.

24 **V.    CONCLUSION**
25       The Government's motion for summary judgment is denied.
26 //
27 //
28 //

**IT IS SO ORDERED.**

Dated: July 12, 2024



Donna M. Ryu
Chief Magistrate Judge