UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TUNCAY SAYDAM,<br><br>Defendant. | Case No.  22-cv-07371-DMR<br><br>**ORDER ON MOTION TO REDUCE PENALTIES**<br><br>Re: Dkt. No. 93 |

On March 1, 2021, the U.S. Internal Revenue Service ("IRS") assessed a penalty of $437,564 against Tuncay Saydam for willfully failing to report his foreign bank accounts in violation of the Bank Secrecy Act, 31 U.S.C. § 5314, for the years 2013 to 2017.  Saydam contested the penalty and refused to pay it.  On November 22, 2022, the government filed this lawsuit to reduce the civil penalty assessment to judgment.  [Docket No. 1 (Compl.).]  The court held a jury trial, and on October 3, 2024, the jury returned a verdict of willful violation of the reporting statute for the years 2013 to 2017.  [Docket No. 87.]

Saydam now moves to reduce the amount of the penalty under the Excessive Fines Clause of the Eighth Amendment.  [Docket Nos. 93 (Mot.); 95 (Reply).]  The Government opposes, arguing that Saydam has waived or forfeited his Eighth Amendment challenge, that the Excessive Fines Clause does not apply, and that even if it did, the penalty is not excessive.  [Docket No. 94 (Opp'n).]  For the following reasons, Saydam's motion is denied.

## I.       BACKGROUND

The Bank Secrecy Act requires an individual to file a Report of Foreign Bank and Financial Accounts ("FBAR") with the IRS for each calendar year that individual has more than $10,000 in a foreign bank account.  31 C.F.R. §§ 1010.350(a), 1010.306(c).  In the event of a failure to file an FBAR, the statute authorizes the IRS to impose a civil penalty of up to $10,000

for each violation.  31 U.S.C. § 5321(a)(5)(B).  If an individual willfully fails to file an FBAR, the statute authorizes the IRS to impose a civil penalty of up to the greater of either $100,000 or 50 percent of the value in the account at the time of the violation.  *Id.* § 5321(a)(5)(C)-(D).

Saydam was born in Turkey and maintains dual citizenship in Turkey and the United States.  From 2013 to 2017, Saydam had multiple bank accounts in Turkey with balances over $10,000.  The Government's assessment of the annual aggregate balances in Saydam's foreign accounts and the FBAR penalties are as follows:

| Year | Maximum Aggregate Account Balance | Penalty |
|---|---|---|
| 2013 | $847,826 | $129,346 |
| 2014 | $875,127 | $133,511 |
| 2015 | $719,472 | $109,764 |
| 2016 | $213,456 | $32,565 |
| 2017 | $212,229 | $32,378 |
| **Total** | | **$437,564** |

The Government calculated the penalties by taking the aggregate balance with the highest amount in this time span, which was Saydam's 2014 foreign accounts ($875,127).  This amount was then divided in half ($437,564), and split proportionally among the five years.  [Docket Nos. 94 (Opp'n); 94-2 (Penalty Calculations).]  With interest, the total penalty owed is $544,933.  Mot. 3.

In his answer as well as his opposition to the Government's summary judgment motion, Saydam did not challenge the penalty amount, focusing instead on the issue of willfulness. [Docket Nos. 8 (Answer), 36 (Opp'n MSJ).]  Leading up to trial, the parties stipulated in their joint pretrial statement that: "if Saydam is found to have acted willfully in failing to timely file FBARs, the penalties at the time of assessment were correctly calculated as: $129,346 for 2013, $133,511 for 2014, $109,764 for 2015, $32,565 for 2016, and $37,378[1] for 2017. . . . [T]he parties stipulate and agree that the only issue for the jury is whether Saydam's failure to file timely

---

[1] This appears to be a typographic error—the parties agree in their other papers that a $32,378 penalty was assessed for 2017.

2

FBARs was willful. The parties stipulate and agree that the final amount of any judgment should be determined post-trial through stipulation and/or briefing, following the determination of Saydam's willfulness at trial." [Docket No. 53 (Pretrial Statement) 6.] After the jury returned its verdict, the parties filed a "Stipulation Regarding the Amount of the Judgment." [Docket No. 91.] In that filing, Saydam stated he "agrees that the original penalty amounts were properly calculated under the penalty statute; 31 U.S.C. § 3521. However, [Saydam] is stipulating to the calculations only and intends to move for a reduction of the penalties on Eighth Amendment grounds." *Id.*

Saydam filed a motion to reduce penalties under the Eighth Amendment on November 12, 2024. The Government filed an opposition, and Saydam filed a reply.[2] The parties' briefing disputed whether Saydam's failure to report his foreign accounts resulted in a tax loss to the government. The parties also indicated that the issue of Saydam's unpaid taxes was pending in tax court proceedings in *Saydam v. Comm'r*, No. 12312-23. The court ordered the parties to file status reports on the tax court proceedings. [Docket Nos. 97, 99.] On June 27, 2025, the parties stipulated, and the tax court entered a decision, finding the following deficiencies in income tax and penalties due from Saydam:[3]

| Year | Deficiency | Penalties under § 6662(b)(7)[4] | Penalties under § 6663[5] |
|------|-----------|----------------------------------|----------------------------|
| 2013 | $10,389 | $4,155.60 | None |
| 2014 | $7,685 | $3,074 | None |
| 2015 | $12,364 | $4,945 | None |
| 2016 | $750 | $300 | None |
| 2017 | $1,065 | $426 | None |

[2] The Government also filed an objection to Saydam's Exhibit 8, attached as new evidence to his reply. [Docket No. 96.] As the court does not rely on Exhibit 8 in the resolution of this motion, the Government's objection is denied as moot.

[3] The tax court finding included calculations for 2011 and 2012, but the court does not consider them here because those years are not at issue for the FBAR violations.

[4] 26 U.S.C. § 6662(b)(7) imposes penalties for negligent "undisclosed foreign financial asset understatement."

[5] 26 U.S.C. § 6663 imposes penalties for tax fraud.

United States District Court
Northern District of California

[Docket No. 100-1 (Tax Court Decision).]  Including Saydam's advance payments and tax credits, and not including penalties, the Government's final tax loss is $29,006:

| Year | Tax Loss |
|------|----------|
| 2013 | $8,318 |
| 2014 | $6,978 |
| 2015 | $11,895 |
| 2016 | $750 |
| 2017 | $1,065 |
| **TOTAL:** | **$29,006** |

The court ordered the parties to file supplemental briefing on the relevance of the tax court decision to Saydam's motion to reduce penalties.  The parties did so.  [Docket Nos. 102 (Gov. Supp. Brief); 103 (Saydam Supp. Brief).]

## II.    LEGAL STANDARDS

The Eighth Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  For the Excessive Fines Clause to apply to Saydam's penalty under 31 U.S.C. § 5321(a)(5), Saydam must demonstrate that 1) the statutory provision was a fine, i.e., it imposed punishment; and 2) the fine was excessive.  *See Wright v. Riveland*, 219 F.3d 905, 915 (9th Cir. 2000) (citing *Austin v. United States*, 509 U.S. 602, 622 (1993)).

Waiver is the "intentional relinquishment or abandonment of a known right."  *United States v. Olano*, 507 U.S. 725, 733 (1993) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).  "A defendant may waive his constitutional rights if clear and convincing evidence shows that the waiver is knowing, voluntary, and intelligent."  *United States v. Pollard*, 850 F.3d 1038, 1043 (9th Cir. 2017) (citing *Gete v. I.N.S.*, 121 F.3d 1285, 1293 (9th Cir. 1997)).  The court "indulge[s] every reasonable presumption against waiver."  *Id.*  These principles apply equally to criminal and to civil cases.  *Gete*, 121 F.3d at 1293.  In contrast, forfeiture is the "failure to make the timely assertion of a right."  *Olano*, 507 U.S. at 733.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III. DISCUSSION

#### A. Waiver or Forfeiture

The Government argues that Saydam waived his Eighth Amendment challenge because he stipulated to the penalty amount in the pretrial statement. Opp'n 3-4. The Government also contends that Saydam forfeited his Eighth Amendment challenge because he failed to raise it until after the trial. *Id.* at 4.

"To determine whether a defendant has knowingly, voluntarily, and intelligently waived his constitutional rights, 'we review the particular circumstances of the case and the nature of the right involved.'" *Pollard*, 850 F.3d at 1043 (citing *Gete*, 121 F.3d at 1293). Having reviewed the record, the court finds that Saydam did not waive his Eighth Amendment challenge. When Saydam agreed in the joint pretrial statement that "the penalties at the time of assessment were correctly calculated," he also stipulated that "the final amount of any judgment should be determined post-trial through stipulation and/or briefing, following the determination of Saydam's willfulness at trial." Pretrial Statement 6. This supports that Saydam did not intend to relinquish his right to challenge the final amount of judgment. The Government argues that if Saydam agrees the penalties were correctly calculated, then by implication, Saydam agrees that the penalties were not disproportionate under the Eighth Amendment. Opp'n 4. This stretches the plain language of the stipulation. Saydam is not contesting the maximum aggregate account balances he had in his foreign accounts, and he acknowledges that the IRS's penalty assessment was authorized under the statute. However, the question of whether the correctly calculated penalties violate the Constitution is a separate inquiry. The language of the stipulation reasonably can be interpreted to not waive Saydam's Eighth Amendment challenge. The court finds that Saydam has not waived his constitutional right, especially in light of the "presumption against waiver." *See Pollard*, 850 F.3d at 1043.

The Government also argues forfeiture but does not explain why a timely Eighth Amendment challenge must be raised before or during trial, particularly where the parties agreed to reserve argument about the amount of the final judgment for post-trial submissions. The Government cites two cases where an Eighth Amendment challenge was found to be forfeited as untimely: *Norman v. United States*, 942 F.3d 1111 (Fed. Cir. 2019) and *United States ex rel.*

5

*Kozak v. Chabad of California*, 697 F. App'x 509 (9th Cir. 2017). Both cases are easily distinguishable. In *Norman*, the Federal Circuit declined to consider the appellant's Eighth Amendment argument because she failed to properly preserve it. 942 F.3d at 1118. The appellant had first advanced the argument in a post-trial letter to the district court in which she sought permission to supplement her opposition to the Government's summary judgment motion. *Id.* The district court declined to consider the letter because it was unsolicited, and was sent after the court had already denied the summary judgment motion, after a bench trial was held, and after the plaintiff's first post-trial submission. *Id.; Norman v. United States*, 138 Fed. Cl. 189, 191 (2018). In *Kozak,* the Ninth Circuit found an Eighth Amendment challenge untimely where the party had failed to argue it in district court and only raised it for the first time on appeal. 697 F. App'x at 510. These cases are not remotely comparable to Saydam's situation. In fact, per the parties' agreement, the parties did not make any argument or present evidence about penalty amounts at trial, and the court expressly ordered post-trial submissions so it could determine the amount of the final judgment. [Docket Nos. 89, 92.]

In sum, Saydam has not waived or forfeited his Eighth Amendment challenge. The court proceeds to the merits of his arguments.

### B.    Is the Penalty a Fine?

Before evaluating whether a penalty is excessive, the court must first determine if it meets the definition of a "fine" under the Eighth Amendment. *See Wright*, 219 F.3d at 915. A civil sanction is a fine under the Eighth Amendment when it imposes a "punishment," that is, it "cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes." *Id.* (citing *Austin*, 509 U.S. at 610). "In making this determination, the court considers factors such as the language of the statute creating the sanction, the sanction's purpose(s), the circumstances in which the sanction can be imposed, and the historical understanding of the sanction." *Louis v. Comm'r*, 170 F.3d 1232, 1236 (9th Cir. 1999).

There is a circuit court split on the question of whether FBAR penalties are fines under the

Eighth Amendment, and the Ninth Circuit has yet to squarely rule on the issue.[6]  Saydam cites *Schwarzbaum*, in which the Eleventh Circuit found that "the purpose of the FBAR penalty is—at least in part—punishment."  *United States v. Schwarzbaum*, 127 F.4th 259, 271 (11th Cir. 2025).  The Government cites *United States v. Toth*, 33 F.4th 1 (1st Cir. 2022), *cert. denied*, 143 S. Ct. 552 (2023), *reh'g denied*, 143 S. Ct. 2604 (2023), in which the First Circuit concluded that "a civil penalty imposed under § 5321(a)(5)(C)-(D) is not a 'fine' and as such the Excessive Fines Clause of the Eighth Amendment does not apply to it."  *Id.* at 19.

The court agrees with the reasoning of the Eleventh Circuit and finds that the FBAR penalty serves a deterrent or punitive purpose at least in part, which makes it a fine for purposes of the Eighth Amendment.  As the Eleventh Circuit pointed out, the FBAR penalty scheme is designed to tie the severity of the penalty with the defendant's culpability.  The statute has two tiers: a $10,000 maximum penalty for each non-willful violation, 31 U.S.C. § 5321(a)(5)(B)(i), and a penalty up to the greater of $100,000 or fifty percent of the balance in the foreign accounts for each willful violation, § 5321(a)(5)(C)(i).  "[P]rovisions that focus on the culpability of the defendant make a statutory penalty 'look more like punishment, not less.'"  *Schwarzbaum*, 127 F.4th at 272 (quoting *Austin*, 509 U.S. at 619).  The fact that the FBAR penalty is significantly reduced in cases where the defendant acted non-willfully suggests that the penalty has a punitive aspect.

The Eleventh Circuit also discussed the legislative history of the statute.  The Bank Secrecy Act was passed in 1970.  The Committee on Banking and Currency, in their report summarizing and recommending the passage of the bill, described a long list of problems that the foreign account reporting requirement was designed to address:

> Secret foreign bank accounts and secret foreign financial institutions have permitted proliferation of "white collar" crime; have served as the financial underpinning of organized criminal operations in the United States; have been utilized by Americans to evade income taxes, conceal assets illegally and purchase gold; have allowed

---

[6] In *United States v. Bussell*, 699 F. App'x 695, 696 (9th Cir. 2017), the Ninth Circuit analyzed whether an FBAR penalty was excessive and found that it was not grossly disproportional to the appellant's offense.  While this lends support to treating the FBAR penalty as a fine, the Ninth Circuit did not explicitly address whether the penalty was a fine under the Eighth Amendment.

United States District Court
Northern District of California

> Americans and others to avoid the law and regulations governing securities and exchanges; have served as essential ingredients in frauds including schemes to defraud the United States; have served as the ultimate depository of black market proceeds from Vietnam; have served as a source of questionable financing for conglomerate and other corporate stocks acquisitions, mergers and takeovers; have covered conspiracies to steal from U.S. defense and foreign aid funds; and have served as the cleansing agent for "hot" or illegally obtained monies.

H.R. Rep. No. 91-975, at 4397-98 (1970).  Tax evasion was just one of the many concerns Congress expressed about the use of secret foreign accounts, suggesting that the FBAR requirement was meant to deter a range of unlawful conduct rather than just remedy the Government's tax loss.  Moreover, the statute initially imposed penalties only on financial institutions and capped the penalties for willful violations at $1,000.  *Schwarzbaum*, 127 F.4th at 273 (citing *Bittner v. United States*, 598 U.S. 85, 98 (2023)).  In 1986, Congress expanded the penalties to apply to individuals and raised the penalties cap to $25,000 or the balance of the foreign account (not to exceed $100,000), whichever was greater.  *Id.* (citing Pub. L. 99–570, § 1357(c), 100 Stat. 3207).  In 2004, Congress increased the penalties again, to the current penalty scheme.  "Explaining the 'reasons for change' to the FBAR penalties, the [Joint Committee on Taxation] wrote that 'Congress believed that increasing the prior-law penalty for willful noncompliance with this requirement . . . will improve the reporting of foreign financial accounts.'"  *Id.* (citing Staff of Joint Comm. on Tax'n, 108th Cong., *General Explanation of Tax Legislation Enacted in the 108th Congress*, pt. 17, § VII, 2005 WL 5783636, at *34 (Comm. Print 2005)).  The Government argues that the legislative history is ambiguous, particularly because civil FBAR penalties were enacted alongside criminal ones.  The court finds that the increasingly steeper penalties imposed by Congress for willful civil FBAR violations lends support to Saydam's argument that the penalties have a deterrent purpose.

Given the structure of the FBAR civil penalty scheme and its legislative history, the court finds that the penalty "cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes."  *See Austin*, 509 U.S. at 621 (citing *United States v. Halper*, 490 U.S. 435, 448 (1989)).  Therefore, the penalty is a fine under the Eighth Amendment.

United States District Court
Northern District of California

1    The First Circuit reached a different conclusion in *Toth*. *Toth* made four points in

2  concluding that the FBAR civil penalty is not a fine: 1) it is "not tied to any criminal sanction,"

3  but is instead part of an "administrative tax audit"; 2) it resembles civil forfeitures in early customs

4  laws that the Supreme Court has held do not constitute punishment for purposes of the Excessive

5  Fines Clause (citing *One Lot Emerald Cut Stones and One Ring v. United States*, 409 U.S. 232

6  (1972) and *Stockwell v. United States*, 80 U.S. 531 (1871)); 3) it resembles civil tax penalties that

7  the Supreme Court has held not to be punishment (citing *Helvering v. Mitchell*, 303 U.S. 391, 398

8  (1938) and *McNichols v. C.I.R.,* 13 F.3d 432, 434-435 (1st Cir. 1993)); and 4) it has a remedial

9  function of recouping the Government's lost tax revenue in foreign financial accounts, as well as

10  the cost of lengthy investigations. *Toth*, 33 F.4th at 16-19.

11    The court declines to follow the reasoning in *Toth*. First of all, in the Ninth Circuit, a civil

12  penalty does not have to be tied to a criminal sanction in order to implicate the Excessive Fines

13  Clause. *See, e.g., Pimentel v. City of Los Angeles (Pimentel I)*, 974 F.3d 917, 922 (9th Cir. 2020)

14  (finding that a $63 municipal parking fee is a "fine" under the Eighth Amendment). Thus, the

15  FBAR penalty does not cease to be a punishment simply because it is part of an administrative tax

16  audit.

17    As to *Toth's* second point, the court disagrees that an FBAR violation is comparable to the

18  customs violations at issue in *One Lot Emerald Cut Stones* and *Stockwell*. Civil forfeitures for

19  customs violations aim to "prevent[] forbidden merchandise from circulating in the United States,

20  and . . . provide[] a reasonable form of liquidated damages for violation of the inspection

21  provisions and serve[] to reimburse the Government for investigation and enforcement expenses."

22  *One Lot Emerald Cut Stones*, 409 U.S. at 237. They are traditionally considered "remedial rather

23  than punitive." *Id.* An FBAR violation more closely resembles the reporting violation at issue in

24  *United States v. Bajakajian*, 524 U.S. 321 (1998), which concerned the respondent's willful failure

25  to report the transportation of $357,144 in cash currency out of the United States.[7]   Pursuant to 18

26

27  ───────────────

28  [7] The Bank Secrecy Act (the same law that created the FBAR reporting requirement) requires that
a person report when they transport more than $10,000 outside the United States.  31 U.S.C. §
5316(a)(1)(A).

United States District Court
Northern District of California

1  U.S.C. § 982(a)(1), the Government sought full forfeiture of the respondent's currency.  *Id.*  The

2  Supreme Court had "little trouble concluding that the forfeiture of currency ordered by § 982(a)(1)

3  constitutes punishment."  *Id.* at 328.  The Court distinguished civil forfeitures in customs

4  violations, which "serve the remedial purpose of compensating the Government for a loss," from

5  the forfeiture of unreported currency, which "deter[s] illicit movements of cash."  *Id.* at 329.  The

6  Court stated: "Although the Government has asserted a loss of information regarding the amount

7  of currency leaving the country, that loss would not be remedied by the Government's

8  confiscation of respondent's $357,144."  *Id.*  The Court found that the penalty for failure to report

9  the transportation of cash had the goal of deterrence, so it was a fine under the Eighth

10  Amendment.  *Id.* at 328-29.  Likewise, an FBAR violation under 31 U.S.C. § 5321(a)(5)(B)

11  constitutes "a loss of information" regarding the amount of funds held by an individual in foreign

12  accounts.  The FBAR penalties do not remedy that loss of information.  While the Government

13  may argue that the FBAR penalty helps remedy the Government's lost tax revenue and the cost of

14  investigations, this cannot fairly be said to be the sole purpose of the FBAR penalty.  *See Austin*,

15  509 U.S. at 621.  As discussed below, the penalty applies regardless of the Government's lost tax

16  revenue.  The penalty can only be explained as also having the goal of deterrence.  A penalty that

17  has some partially remedial purpose of recouping the Government's losses can still be punitive.

18  *See Bajakajian*, 524 U.S. at 329 n.4.

19  The court also disagrees with *Toth*'s third and fourth points.  The FBAR penalty is not

20  comparable to a civil tax penalty.  The Supreme Court has held that civil tax penalties are remedial

21  because they are "provided primarily as a safeguard for the protection of the revenue and to

22  reimburse the Government for the heavy expense of investigation and the loss resulting from the

23  taxpayer's fraud."  *Helvering v. Mitchell*, 303 U.S. 391, 401 (1938).  Likewise, the Ninth Circuit

24  has held that additions to tax for fraud or negligence are "purely revenue raising because they

25  serve only to deter noncompliance with the tax laws by imposing a financial risk on those who fail

26  to do so."  *Little v. Comm'r*, 106 F.3d 1445, 1454 (9th Cir. 1997); *see also Louis v. Comm'r*, 170

27  F.3d 1232, 1236 (9th Cir. 1999).  The Government argues that the FBAR penalty is

28  "indistinguishable" from the civil tax penalties in *Helvering, Little*, and *Louis*, because the FBAR

penalty is assessed by the IRS after an audit.  Opp'n 6.  In addition, the Government contends that the use of secret foreign accounts causes "hundreds of millions" of dollars in lost tax revenues, so the penalties are remedial because they compensate the Government for the costs of expensive international investigations and the losses to the public fisc posed by the foreign accounts.  *Id.* at 7 (citing H.R. Rep. No. 91-975, at 4397-98 (1970)).

However, Saydam points out an important distinction: the FBAR reporting requirement applies regardless of whether the foreign accounts are generating income, and regardless of whether taxes are actually owed to the Government on that foreign account.  Reply 4-5.  In other words, the Government does not need to show any damages before levying an FBAR penalty. This is different from the civil tax penalties in *Helvering*, *Little*, and *Louis*, which are directly tied to the amount of taxes underpaid by the taxpayer.  As a comparison, the Ninth Circuit has held that sanctions under the False Claims Act (FCA)[8] are fines under the Eighth Amendment because "[n]o damages to the government need be shown."  *United States v. Mackby*, 261 F.3d 821, 830 (9th Cir. 2001).  The fact that the FBAR penalty applies regardless of actual losses to the government supports a finding that the penalty is not like a civil tax penalty.  The FBAR reporting requirement is also part of the Bank Secrecy Act under Title 31, not the Internal Revenue Code under Title 26, which further sets the FBAR penalty apart from civil tax penalties and makes it more like the civil fine in *Bajakajian*.

The Government argues there is a separate criminal FBAR statute and the criminal FBAR penalty is explicitly defined as a "fine," therefore Congress must have intended the civil FBAR statute to not be a fine.  Opp'n 7 (citing 31 U.S.C. §§ 5322(a); 5321(a)(5)).  The Government cites *Landa v. United States*, 153 Fed. Cl. 585, 601 (2021) and *United States v. Rund*, 743 F. Supp. 3d 779, 795 (E.D. Va. 2024), which held that the civil FBAR penalty must be remedial because to read it as punitive would make the criminal FBAR penalty "superfluous."  However, *Landa* and *Rund* analyzed the civil FBAR penalty under the framework established by *Hudson v. United*

United States District Court
Northern District of California

---

[8] The FCA provides for sanctions for each false or fraudulent claim made to the United States for payment or approval, which ultimately protects the public fisc from losses due to fraud against the government.  31 U.S.C. §§ 3729–3733.

*States*, 522 U.S. 93, 99-100 (1997).  The *Hudson* framework was solely intended for cases where the Double Jeopardy Clause is at issue—in other words, where the dispute is about whether a nominally civil penalty should be reclassified as a criminal penalty.  *Hudson* did not address when a penalty is a fine under the Excessive Fines Clause.[9]  The Ninth Circuit has made clear that Double Jeopardy considerations are not relevant to the Excessive Fines analysis.  *See Wright v. Riveland*, 219 F.3d 905, 916 (9th Cir. 2000).

In sum, the court follows *Schwarzbaum* and finds that the FBAR civil penalty is a fine under the Eighth Amendment.  This is consistent with the only other district court in the Ninth Circuit that has considered the issue since *Schwarzbaum*.  *See United States v. Leeds*, No. 1:22-CV-00379-AKB, 2025 WL 743996, at *10-11 (D. Idaho Mar. 7, 2025), *reconsideration denied*, No. 1:22-CV-00379-AKB, 2025 WL 2439178 (D. Idaho Aug. 25, 2025) (finding that the FBAR civil penalty is a fine).

Having determined that the Eighth Amendment applies, the court now proceeds to analyze whether Saydam's FBAR penalty is excessive.

## C.    Is the Fine Excessive?

A fine is excessive when the amount "is grossly disproportional to the gravity of the defendant's offense."  *Bajakajian*, 524 U.S. at 336–37.  "To determine whether a fine is grossly disproportional to the underlying offense, four factors are considered: (1) the nature and extent of the underlying offense; (2) whether the underlying offense related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of the harm caused by the offense."  *Pimentel I*, 974 F.3d at 921.  Absent material evidence to the contrary, the court "must afford 'substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments.'"  *Id.* at 924 (quoting *Bajakajian*, 524 U.S. at 336).  The Government "need not prove 'strict proportionality' between the amount of the fine and the gravity of the offense."  *Pimentel v. City of Los Angeles (Pimentel II)*, 115 F.4th 1062, 1067

---

[9] In fact, the Supreme Court in *Hudson* noted that the Eighth Amendment can provide protections even where the Double Jeopardy Clause does not.  *Hudson*, 522 U.S. at 103.

(9th Cir. 2024) (quoting *Pimentel I*, 974 F.3d at 924).

### 1.    Nature of Underlying Offense

"Courts typically look to the violator's culpability to assess" the nature and extent of the underlying offense. *Pimentel I*, 974 F.3d at 922. Saydam was found to have willfully failed to file timely FBARs from 2013 through 2017—"willfully" being defined as knowing, willfully blind, or reckless. [Docket Nos. 85 (Final Jury Instructions); 87 (Jury Verdict).] Under Ninth Circuit authority, "reckless behavior" shows "more than a minimal level of culpability." *Pimentel I*, 974 F.3d at 923 (citing *United States v. $100,348.00 in U.S. Currency (Currency Case One)*, 354 F.3d 1110, 1123 (9th Cir. 2004)).

### 2.    Relation to Other Illegal Activities

Saydam argues that the record is devoid of any evidence that Saydam "engaged in money laundering, illegal trade or other criminal activities" related to his undisclosed foreign accounts. Mot. 7. While the Government argues the IRS "could have" asserted criminal FBAR penalties against Saydam, and that Saydam "may" be liable for fraud penalties for not reporting the income in his foreign accounts, the Government does not dispute that Saydam did not engage in other criminal activity related to his foreign accounts. Opp'n 11.

### 3.    Alternative Penalties

The court considers "'other penalties that the Legislature has authorized' . . . as measures of the gravity of the offense." *See Currency Case One*, 354 F.3d at 1122 (citing *United States v. 3814 NW Thurman St.*, 164 F.3d 1191, 1197 (9th Cir. 1999)). Both parties compare the civil FBAR penalty to the criminal penalty for willful violations of the FBAR requirement. *See* 31 U.S.C. § 5322(a). The maximum statutory penalty for a criminal FBAR violation is $250,000 and five years in prison, and each year is considered a separate violation. *Id.; see also Bittner v. United States*, 598 U.S. 85, 103, 143 S. Ct. 713, 725 (2023). Thus, the maximum penalty Saydam could have faced under the statute is $1.25 million and 25 years in prison. This certainly demonstrates that Congress "did not view the reporting offense as a trivial one." *See Bajakajian*, 524 U.S. at 339 n.14.

Saydam also compares his penalty to the U.S. Sentencing Guidelines Manual (U.S. Sent'g

Comm'n 2024).  The Government argues this is unnecessary, and that the maximum criminal

FBAR penalty is the only comparison the court should make.  Opp'n 11-12.  Not so.  "[T]he

maximum penalties under the Sentencing Guidelines should be given greater weight than the

statutory maximum because the Guidelines take into account the specific culpability of the

offender."  *Currency Case One*, 354 F.3d at 1122.  As the Supreme Court put it, "That the

maximum fine and Guideline sentence to which respondent was subject were but a fraction of the

penalties authorized . . . undercuts any argument based solely on the statute, because they show

that respondent's culpability relative to other potential violators of the reporting provision—tax

evaders, drug kingpins, or money launderers, for example—is small indeed."  *Bajakajian*, 524

U.S. at 339 n.14.  The court considers the Guidelines in its Eighth Amendment analysis.

　　　　Saydam proposes, and the Government does not dispute, that the Sentencing Guidelines

for tax evasion and money laundering would apply in the event that a criminal FBAR violation

were found.  *See* U.S.S.G. §§ 2T1.1, 2S1.3, 5E1.2.  Based on the stipulated amount of tax loss,

Saydam's offense level under the Guidelines would be level 10 for 2013-2015, and level 6 for

2016-2017.  *See* § 2T4.1.  The Guidelines would allow a prison sentence between zero to six

months for each level 6 offense, and between six and twelve months for each level 10 offense,

resulting in a maximum sentence of four years.  *See* § 5A.  The Guidelines would also allow a fine

between $1,000 and $9,500 for each level 6 offense, and between $4,000 and $40,000 for each

level 10 offense, resulting in a maximum fine of $139,000.  *See* § 5E1.2.  Additionally, the

Government argues that sentencing enhancements such as the obstruction enhancement (for

making false statements and submitting fraudulent FBARs during his audit) and the sophisticated

means enhancement (for using multiple banks across two foreign countries) could increase the

maximum fine and prison sentence further.  Gov. Supp. Brief 4 (citing U.S.S.G. §§ 3C1.1 and

2T1.1(b)(2)).  With both enhancements, the maximum prison sentence would be 7.9 years and the

maximum fine would be $335,000.  However, it is at best speculative that these enhancements

would apply.

　　　　Even without the enhancements, Saydam's total FBAR penalty of $437,564 is 3.1 times

greater than the maximum fine of $139,000 under the Sentencing Guidelines, and Saydam could

have faced up to four years of prison for comparable conduct.  The fact that the penalty is greater than the Guidelines maximum is not dispositive.  "[F]orfeiture does not per se violate the Eighth Amendment simply because the amount to be forfeited exceeds the maximum fine under the Sentencing Guidelines."  *United States v. $132,245.00 in U.S. Currency (Currency Case Two)*, 764 F.3d 1055, 1060 (9th Cir. 2014).  For example, the Ninth Circuit has held that a $132,245 forfeiture penalty for a currency reporting violation was not excessive under the Eighth Amendment where it was 2.6 times the maximum fine under the Guidelines, and where a hypothetical criminal sentence could have also included a 27–month term of imprisonment.  *See id.*  Saydam's case is similar.  It stands in stark contrast with *Bajakajian*, where the Supreme Court held that a $357,144 forfeiture penalty for a currency reporting violation was excessive.  *Bajakajian*, 524 U.S. at 339.  Under the Sentencing Guidelines, the defendant in *Bajakajian* would have faced at most a 6–month sentence and a $5,000 fine.  *Id.* at 338.  The Court held: "Such penalties confirm a minimal level of culpability."  *Id.* at 339.  Here, a $139,000 fine and a four-year prison sentence confirm a significantly higher level of culpability than was the case in *Bajakajian*.

Saydam cites *Currency Case One*, where the Ninth Circuit held that a $100,348 forfeiture penalty for a currency reporting violation was excessive.  But the maximum fine the defendant in that case could have faced was $30,000, or possibly even as low as $5,000 (depending on mitigating factors), again pointing to a low level of culpability.  *Id.* at 1123.  The court finds that the analysis in *Currency Case Two* is closer to Saydam's situation.

### 4.    Harm Caused by Offense

Finally, the court must determine "the extent of the harm caused by the violation."  *Pimentel I*, 974 F.3d at 923.  "The most obvious and simple way to assess this factor is to observe the monetary harm resulting from the violation."  *Id.*  The parties have stipulated and the tax court has determined that the Government suffered harm from Saydam's failure to report his foreign accounts.  Tax Court Decision.  Specifically, the Government suffered a tax loss of $29,006 from Saydam's taxable income in his foreign accounts.  Gov. Supp. Brief 5.  This is a significant amount, and precisely one of the harms that the FBAR penalty was intended to deter.  *See H.R.

Rep. No. 91-975, at 4397-98.  The Government's tax loss sets the case apart from *Bajakajian*, where the respondent's conduct was "solely a reporting offense" and the only loss suffered by the Government was informational.  524 U.S. at 337, 339.  It also distinguishes this case from *Currency Case One*, where there was "no evidence that the government suffered a loss."  354 F.3d at 1123.

Saydam contends that the Government did not in fact suffer harm because Saydam lost a significant amount of money in 2015, and Saydam theoretically could have claimed the loss as tax-deductible fraud losses.  Mot. 10; *see* [Docket No. 88-19 (Trial Exhibit 19)].  As Saydam concedes, however, he missed the opportunity to claim those losses and cannot use them to mitigate his tax deficiencies.  Saydam Supp. Brief 2.  Saydam also argues that the Tax Court Decision was based on incomplete financial records of Saydam's income, so the Government has not demonstrated that it suffered harm.  *Id.* at 2, 5.  But it is Saydam's burden to prove that each penalty violates the Eighth Amendment.  *Schwarzbaum*, 127 F.4th at 280.  His speculative assertion that he would not have needed to pay the $29,006 to the IRS, if he had only kept complete financial records and availed himself of all tax deductions, fails to meet his burden of proof.  The fact is that the tax court assessed $29,006 in tax loss to the IRS.  The court finds that the Government has suffered harm.

### 5.    Hardship to Defendant

Saydam argues that the financial hardship he would suffer if the FBAR penalty were levied against him is a proper consideration under the Excessive Fines Clause.  Mot. 11.  Saydam cites three cases in support of this argument: *United States v. Real Prop. Located in El Dorado Cnty. at 6380 Little Canyon Rd., El Dorado, Cal.*, 59 F.3d 974, 985 (9th Cir. 1995), *as amended on denial of reh'g* (Sept. 13, 1995); *United States v. Levesque*, 546 F.3d 78, 83 (1st Cir. 2008); and *Timbs v. Indiana*, 586 U.S. 146, 151-52 (2019).

The Supreme Court has traced the history of the Excessive Fines Clause back to the 1215 Magna Carta, which required that "economic sanctions 'be proportioned to the wrong' and 'not be so large as to deprive [an offender] of his livelihood.'"  *Timbs*, 586 U.S. 146, 151 (2019) (quoting *Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 271 (1989)).  Based

1    on this history, the First Circuit has included another factor in addition to the *Bajakajian* factors

2    when weighing the proportionality of a forfeiture: whether the forfeiture was "so onerous as to

3    deprive a defendant of his or her future ability to earn a living." *Levesque*, 546 F.3d at 83.

4        It is unclear if this additional factor is part of the Excessive Fines analysis under Ninth

5    Circuit law, particularly where the fine is a monetary penalty rather than an *in rem* forfeiture.[10]

6    Assuming without deciding that deprivation of livelihood is a relevant consideration, Saydam has

7    not demonstrated that the FBAR penalty would deprive him of his future livelihood. He has not

8    offered evidence that would allow the court to evaluate his present or future financial

9    circumstances. The motion only attaches an email which states that, if Saydam is unable to pay

10   the penalty, the Government may request a writ of execution to sell Saydam's home (although the

11   Government "would prefer to reach an agreement with a judgment debtor to satisfy an outstanding

12   FBAR judgment"). [Docket Nos. 93-1 (Douglas Greenberg Decl., Nov. 12, 2024) ¶ 2; 93-2 (email

13   exchange between counsel for Saydam and the Government).] As the First Circuit in *Levesque*

14   acknowledged, the Government may seize assets to satisfy a money judgment without violating

15   the Excessive Fines Clause. *Levesque*, 546 F.3d at 85. Saydam's speculative assertion that he

16   might lose his current residence[11] does not meet his burden to prove that the FBAR penalty would

17   actually deprive him of his livelihood. In the absence of supporting evidence, the court does not

18   consider hardship to Saydam in its Excessive Fines analysis.

19       Considering all four *Pimentel I* factors, the court finds that Saydam's $437,564 fine is not

20   excessive. Because Saydam was found to have at least recklessly violated the FBAR statute, he

21   has more than minimal culpability. It is true that Saydam was not engaged in other illegal

---

[10] The Ninth Circuit in *El Dorado* considered "the hardship to the defendant, including the effect of the forfeiture on defendant's family or financial condition" when evaluating a forfeiture under the Excessive Fines Clause. 59 F.3d at 985. *El Dorado* does not apply here. It was issued pre-*Bajakajian*, and concerned an *in rem* forfeiture. In a more recent case, the Ninth Circuit declined to consider the defendant's ability to pay the fine as part of the proportionality analysis. *Pimentel II*, 115 F.4th at 1072. However, the Ninth Circuit left open the possibility that the impact on a defendant's livelihood may still be a factor in the Excessive Fines Clause analysis, noting that "a deprivation of livelihood is distinct from a present inability to pay." *Id.* at 1073.

[11] The Government presents evidence that Saydam purchased his San Francisco residence on April 29, 2021, about two months after the IRS assessed the FBAR penalties against him. [Docket Nos. 38-1 (Lolita De Palma Decl., June 27, 2024) ¶ 6; 38-3 (Grant Deed).]

United States District Court
Northern District of California

conduct, such as money laundering or illegal trade.  Nevertheless, the fine amount is not grossly disproportional to the maximum fine and sentence that the Sentencing Guidelines would have mandated for a comparable criminal charge.  Additionally, the Government suffered a significant tax loss.  This loss was compounded by the need to expend Government resources to investigate; Saydam's unlawful conduct only came to light after the Government engaged in the considerable time and expense of an IRS audit.  Saydam argues that such a harsh FBAR penalty is "simply not intended for defendants like him."  Mot. 13.  Although the penalty is steep, Saydam "is not an innocent victim: he is only subject to the fifty percent penalty because he recklessly disregarded the law which required him to report foreign bank accounts."  *See Schwarzbaum*, 127 F.4th at 282.  This is precisely the type of willful conduct Congress meant to deter when it set the current penalty amounts in 2004.  *Id.* at 283.

Finally, the Government is imposing a significantly reduced penalty against Saydam.  "The presumption of constitutionality is particularly strong when the specific penalty sought by the Government is less than the statutory maximum."  *Schwarzbaum*, 127 F.4th at 284.  Based on the maximum aggregate balance in Saydam's foreign accounts between 2013 and 2017, the maximum statutory penalty the Government could have assessed is $1,434,055 (the sum of all aggregate balances, divided by two).  Instead, the Government essentially assessed the maximum statutory penalty for one year—2014.  The Government then split the 2014 penalty across all five years.  The $437,564 penalty assessed against Saydam is 31% of the total statutory maximum based on the aggregate balance in Saydam's foreign accounts.  The Government also presents evidence that, if the account balances were disaggregated and the maximum $100,000 penalty were applied for smaller individual accounts, the total maximum FBAR penalty could be as high as $2,523,484.  [Docket Nos. 94-1 (Lolita De Palma Decl., Nov. 26, 2024) ¶ 1; 94-2 (FBAR Penalty Calculations).]  Based on the disaggregated calculations, the $437,564 penalty assessed against Saydam is 17% of the total statutory maximum.  Looking at the penalties year-by-year, the penalty assessed for each year never exceeds the highest aggregate amount in the foreign accounts for that year.  This case is distinguishable from *Schwarzbaum*, in which the Eleventh Circuit found that a $100,000 penalty was grossly disproportional where the amount in the underlying foreign account

1    never exceeded $16,000.  127 F.4th at 277-78.[12]

2         Saydam asserts that the harsh FBAR penalty is being unjustly levied against ordinary

3    taxpayers rather than "serious criminals."  Mot. 11-12.  It is not the court's role to legislate, or to

4    second-guess the wisdom of the FBAR statutory penalty scheme.  The court's review is limited to

5    determining if the penalty is "large enough to function as a deterrent," but "is not so large as to be

6    grossly out of proportion to the activity that the [Government] is seeking to deter."  *See Pimentel I*,

7    974 F.3d at 924 (citing *Towers v. City of Chicago*, 173 F.3d 619, 626 (7th Cir. 1999)).  "So long as

8    a government provides an unrebutted commonsense explanation or *some*—even relatively weak—

9    evidence to justify its fine, it will likely prevail against an Excessive Fines Clause challenge.  Our

10   deference is born of a keen awareness that 'any judicial determinations regarding the gravity of a

11   particular . . . offense will be inherently imprecise.'"  *Pimentel II,* 115 F.4th at 1069 (quoting

12   *Bajakajian*, 524 U.S. at 336).  The court finds that the fine assessed against Saydam is not grossly

13   out of proportion to the activity the Government is seeking to deter.  The fine is not excessive.

## IV.    CONCLUSION

15        The court finds that Saydam's civil FBAR penalty of $437,564 is a fine under the Eighth

16   Amendment that is not grossly disproportional to his offense.  His motion to reduce the penalty

17   amount is DENIED.

18        The parties shall meet and confer and file a proposed judgment by December 3, 2025.

21        **IT IS SO ORDERED.**

22   Dated: November 18, 2025

23   _____

         Donna M. Ryu

24       Chief Magistrate Judge

---

[12] *Schwarzbaum* mandates a year-by-year, account-by-account analysis of the FBAR penalties under the Eighth Amendment, "because the statutory regime characterizes *each* failure to report a bank account as a violation in and of itself."  127 F.4th at 276.  Saydam does not argue that a fine for any specific year or account should be held excessive and only asserts that the fine as a whole is excessive.  As it is Saydam's burden to prove that a fine is excessive, the court declines to make a separate Eighth Amendment analysis for each year and each account.

19